# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DR. JANE DOE** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | **Case No. 5-25-CV-1140-XR** |
| | § | |
| **UNIVERSITY OF TEXAS AT SAN** | § | |
| **ANTONIO, SCHOOL OF** | § | |
| **DENTISTRY; and KENNETH M.** | § | |
| **HARGREAVES,  MARIA** | § | |
| **KARAKOUSOGLOU,  SANDRA** | § | |
| **ANDARI, SHAZA ABASS, VISHNU** | § | |
| **RAJ, RAVIKUMAR ANTHONY,** | § | |
| **NIKITA RUPAREL, AHMED** | § | |
| **SABBAH, SUMAN CHALLA,** | § | |
| **JOSHUA STONE, ELVA JORDAN,** | § | |
| **ANGELA PALAIOLOGOU-GALLIS,** | § | |
| **SOO CHEOL JEONG, and HASSEM** | § | |
| **GEHA, IN THEIR OFFICIAL** | § | |
| **CAPACITIES.** | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFF'S FIRST AMENDED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND REQUEST FOR TEMPORARY INJUNCTION

Plaintiff, Dr. Jane Doe, by and through her attorney, David K. Sergi, pursuant to Federal Rule of Civil Procedure 65, moves the Court for entry of a Temporary Restraining Order and Preliminary Injunction enjoining Defendants University of Texas at San Antonio, School of Dentistry; And Kenneth M. Hargreaves,  Maria Karakousoglou,  Sandra Andari, Shaza Abass, Vishnu Raj, Ravikumar Anthony, Nikita Ruparel, Ahmed Sabbah, Suman Challa, Joshua Stone,

Elva Jordan, Angela Palaiologou-Gallis, Dr. Soo Cheol Jeong, and Hassem Geha, in their official capacities, and all persons acting on their behalf, from dismissing Plaintiff from the Dentofacial Orthopedics Residency Program and from communicating with (a) individuals within the School of Dentistry who were not directly involved with the decision or necessary for the preparation of defense of this matter or (b) outside school, professional organization, or similar entity regarding the remediation, probation, and dismissal decisions regarding Plaintiff.  On September 10, 2025, Plaintiff filed a verified Plaintiff's Original Complaint alleging that the process for the decisions placing Plaintiff on remediation, probation and, ultimately to dismiss her, violated her rights to due process under both the 14th Amendment to the United States Constitution and the Texas Constitution Article I, § 19.  Plaintiff would show as follows:

## I.    <u>INTRODUCTION</u>

1. Dr. Doe brings this Amended Emergency Motion for a Temporary Restraining Order and Request for a Preliminary Injunction.  Since the time the original application was filed, it has come to Dr. Doe's attention that Defendants are actively attempting to interfere with the National Institute of Health (hereinafter, "NIH") grant that Dr. Doe is working on, as outlined in paragraphs 22 and 23 below.  See, Exhibit 1, a true and correct copy of which is attached and incorporated herein.  Counsel is cognizant of the Court's reasoning in denying the initial application for a temporary restraining order as demonstrated in *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 94 S. Ct. 1113 (1974).   Not only is there an ongoing effort to interfere with the current NIH grant, but Plaintiff's counsel also has attempted to communicate with the Defendants' counsel, regarding this matter and the request for the temporary restraining order.  Plaintiff's counsel was only provided the email address

on Sunday, September 21, 2025, as described in paragraph 24 below.  Plaintiff's counsel is diligently attempting to schedule a temporary injunction hearing but needs relief on this in the interim.

2.  Plaintiff's Original Complaint[1] ably demonstrates the reason the Fourteenth Amendment requires due process prior to governmental deprivation of a person's life, liberty, or property.

3.  Dr. Doe is a student/resident  and faculty member at the University of Texas at San Antonio, School of Dentistry, Orthodontics and Dentofacial Orthopedics Residency Program (hereinafter, the "Residency Program").  On August 12, 2025, Dr. Doe was dismissed from the Residency Program (i) without receiving notice of several meetings discussing her, (ii) without meaningful descriptions of what she is alleged to have done meriting remediation, probation, or dismissal, and (iii) without being permitted to contest the accusations made against her.

4.  By ignoring Dr. Doe's right to due process, Defendants have aimed a machine that no individual can hope to withstand and dismissed her from the Residency Program with no meaningful notice and no opportunity to refute the accusations made against her.

## II.    STATEMENT OF FACTS

5.  These facts are taken from Plaintiff's Original Complaint which contains a more robust description of the facts and exhibits supporting all allegations in these facts.

6.  Dr. Doe was hired as faculty by the School of Dentistry on July 5, 2022.  Her initial faculty appointment was as a full-time research faculty member with a rank of Assistant Professor, Non-Tenure Track in the Department of Developmental Dentistry.[2]  When hired, Dr. Doe had

---

[1] Plaintiff's Original complaint is ECF Docket #1.
[2] See Plaintiff's Original Complaint Exhibit 3.

already been awarded a federal grant from the NIH, which will have paid the School of Dentistry at total of $1,570,982 by the end of the grant. Part of this grant required the School of Dentistry to pay tuition and fees for an orthodontic residency program at the School of Dentistry.[3] On November 21, 2023, the School of Dentistry sent Dr. Doe an acceptance letter for the Residency Program.[4]

7. The Residency Program began on June 24, 2024. Dr. Doe participated in the Residency Program during the Fall 2024 semester. Throughout the Fall 2024 Semester Dr. Doe believed she was performing at the same level as her peers. As befits a hands-on educational program, she received chairside instruction and corrections during her visits with patients. Even with supervising faculty occasionally making minor chairside corrections, in the same way they do with all residents, all indications were that Dr. Doe was achieving the benchmark for first year residents, as further supported by her passing all of her classes.[5]

8. On February 4, 2025, Dr. Doe was given a carefully curated Fall 2024 faculty evaluation sheet. This included numeric scoring in three areas: academic, clinical, and demeanor; as well as eleven anonymous narrative comments, clearly cut and pasted from other documents.[6] There is no way to know how many faculty members submitted numeric review responses, or how the numeric scores were calculated, as individual scores were not reported.

9. On February 13, 2025, Dr. Doe was given a document titled Remediation Plan for [Jane Doe] (hereinafter, the Initial Remediation Plan) from the Orthodontics Residency Oversight

---

[3] See Plaintiff's Original Complaint Exhibit 4.
[4] See Plaintiff's Original Complaint Exhibit 7.
[5] See Plaintiff's Original Complaint Exhibit 9.
[6] See Plaintiff's Original Complaint Exhibit 12.

Committee (hereinafter, the "OROC").[7]   It was scheduled to run from February 13, 2025, through May 6, 2025.  *At no point prior to her placement on the Initial Remediation Plan was Dr. Doe told the OROC was meeting to discuss her performance or given an opportunity to dispute information or "documentation" used to place her on the Initial Remediation Plan*.

10. At 5:01 PM on March 21, 2025, Dr. Doe received an email from Dr. Ahmed Sabbah, in his role as Chair of the Advanced Education Committee (hereinafter, the "AEC"), stating the OROC had recommended she "be placed on academic probation due to concerns regarding your didactic and clinical performance."[8]   Again, Dr. Doe was not told the OROC was discussing her performance, nor was she given an opportunity to address perceived deficiencies in her performance.  It also stated that this invitation was intended to permit Dr. Doe, "an opportunity…to provide any information regarding ***extenuating circumstances*** that may have contributed to your academic and/or clinical performance."[9] (Emphasis added).

11. As the email came after business hours on a Friday, Dr. Doe was unable to reach anyone until the following Monday morning at which point she emailed the Director of the Office of Student Life/Student Ombudsperson, Ms. Le'Keisha Johnson, and Associate Dean for Academic Faculty & Student Affairs, Dr. Stephanie Seitz, requesting an extension and more information regarding the basis of the OROC recommendation for probation.  Dr. Seitz responded, at 1:38 PM, stating there were concerns regarding patient safety and that Dr. Doe had not been participating in the Initial Remediation Plan.  *This was the first time Dr. Doe received any communication regarding an alleged, and unsubstantiated, patient safety concern or that she*

---

[7] See Plaintiff's Original Complaint Exhibit 13.
[8] See Plaintiff's Original Complaint Exhibit 16.
[9] See *Id*.

*had not been participating in the Initial Remediation Plan.*  Throughout the day Dr. Doe and Dr. Seitz continued to email regarding the upcoming AEC Meeting.  In those emails, Dr. Doe stated she felt "failure or refusal to give me notice of any alleged concern' prior to taking any action that could affect my academic standing is a violation of my rights to procedural and substantive due process."[10]  Despite Dr. Doe voicing these concerns, Dr. Seitz refused to either provide a more detailed description of the accusations against her or delay the AEC meeting.

12. On March 24, 2025, Dr. Doe also emailed her mentor, Dean Kenneth Hargreaves, to request his advice on what she should do at the AEC meeting regarding placing her on probation.  Dr. Hargreaves responded telling Dr. Doe:

> I would attend in person and request documentation of all aspects
> 1. Patient safety concenrs [*sic*]– what is the documentation that you were notified?
> 2. Remediation plan – what is the documentation that you have participated and progressed in the plan?
> 3. Overall progress – what is the complete set of faculty evaluations? Grades from exams?[11]

Later, on March 25, 2025, Dean Hargreaves specifically told Dr. Doe:

> The question is not "extenuating circumstances "
> Rather, **the question is lack of due process – lack of feedback, lack of documentation**

(Emphasis added).[12]

13. Dr. Doe attended the March 25, 2025, AEC meeting regarding placing her on probation.  Dr. Soo Cheol Jeong was present at the AEC meeting and, upon information and belief, participated in the decisions made by the AEC.  *Upon information and belief, Dr. Jeong is an associate professor/clinical and was not a program director at that time.  Dr. Challa also*

---

[10] See Plaintiff's Original Complaint Exhibit 17.
[11] See Plaintiff's Original Complaint Exhibit 1.
[12] See Plaintiff's Original Complaint Exhibit 1 at 11.

*chaired this meeting, despite having previously emailed several times with Dr. Karakousoglou about the issues*.  When, at the beginning of the meeting, Dr. Doe stated she did not know why she was there Dr. Challa responded, "That's okay…."  When she asked for clarification, he merely responded it was due to substandard performance.  After less than fifteen minutes of discussion, primarily concerning Dr. Doe's confusion about the false and unsubstantiated accusations against her, she was excused from the meeting.  The AEC placed Dr. Doe on probation and on March 27, 2025, Dr. Challa emailed her a letter dated the previous day.  In the letter, Dr. Challa stated Dr. Doe had been placed "on probation until you successfully complete your residency training at the UT Health San Antonio School of Dentistry."[13]

14. Dr. Doe has been ill since March 28, 2025, and has provided appropriate medical excuse notes from that date.  Due to her illness, Dr. Doe was unable to meet with Dr. Karakousoglou and was never given a second remediation plan although one was placed in her educational file.  Dr. Doe only saw this plan after as part of her June 2025 FERPA request.  Dr. Doe also has not seen patients from that date.

15. On June 25, 2025, Dr. Nikita Ruparel, Chair-Elect of the AEC sent a letter to Dr. Doe informing her that the OROC had "made a motion to dismiss you from the program based on ongoing concerns regarding your clinical performance and the reliability required for successful progression in the program."[14]  Once again *Dr. Doe was given no notice that the OROC would meet to discuss her and no opportunity to address them*.  Dr. Ruparel invited Dr. Doe to attend the AEC meeting and present "any information regarding **extenuating circumstances** that may

---

[13] See Plaintiff's Original Complaint Exhibit 18.
[14] See Plaintiff's Original Complaint Exhibit 20.

have contributed to your performance."[15]    (Emphasis added)  Again, no specifics were as to

their concerns were provided.

16. Dr. Ruparel later issued a second, updated, invitation on July 11, 2025.[16]  This letter attempted

to expand on the reason for the recommendation for dismissal with the following descriptions:

### 1. Clinical Performance

Throughout your training, supervising faculty have consistently expressed concerns about your ability to meet the clinical standards necessary for safe and effective patient care.  Areas of concern have included treatment planning, documentation and record keeping, and patient management. Despite direct instruction, repeated opportunities to reattempt clinical tasks, and ongoing feedback, you did not demonstrate sustained improvement. When presented with evaluations, you challenged their validity rather than engaging constructively with the feedback. A structured remediation plan was offered to support your development in the identified areas of concern, but your participation was limited, your communication inconsistent, and your performance did not improve in a meaningful way.

Additionally, both direct clinical observation and retrospective review of your care during your first eight months in the program raised serious concerns about your capacity to manage patient care independently. The clinical faculty have unanimously agreed that they can no longer support assigning patients to your care under their supervision and liability.

Compounding these concerns, your lack of insight into areas of deficiency, combined with inconsistent communication regarding patient management have further undermined confidence in your ability to deliver safe, reliable care.

### 2. Failure to Meet Academic and Administrative Expectations

There have been multiple instances in which you failed to adhere to clear academic and administrative directives, including expectations related to communication, attendance, and timely response to program obligations. This resulted in avoidable disruptions and further demonstrated a lack of engagement with your responsibilities as a resident.

Despite repeated clarification of program expectations, your overall conduct has reflected a pattern of noncompliance that has negatively impacted your standing in the program.

### 3. Conduct Inconsistent with Program Policies

There have been repeated inconsistencies in the information you provided regarding your academic performance, attendance, and other responsibilities. These

---

[15] The date for this meeting was originally set for July 8, 2025.  However, the date was later changed to August 11, 2025.

[16] See Plaintiff's Original Complaint Exhibit 21.

discrepancies reflect a concerning pattern that does not align with the program's standards for professional conduct and integrity.

Additionally, concerns have been raised regarding your engagement in activities outside the residency program that did not align with institutional expectations. These activities occurred without appropriate communication or prior approval and presented potential conflicts with program commitments. Such actions are inconsistent with the standards set forth for residents and further contributed to the Committee's recommendation.[17]

_Neither of these letters gave specific examples what Dr. Doe was supposed to have done that_

_was deserving of dismissal._  Nor did the descriptions give her enough information to provide

"any information regarding extenuating circumstances that may have contributed to your

performance."[18]  Despite repeated attempts to request more specific accusations, Dr. Doe was

only given a document signed by 15 faculty members which stated:

Acting in our capacity as clinical supervisors for the Orthodontic Residency Program, the undersigned faculty have concluded that Dr [Jane Doe] lacks the clinical competence and professional judgment required for safe patient care under our supervision. Despite sustained mentoring and repeated support to foster improvement, she has not demonstrated meaningful progress toward program standards.

In view of the attendant risks to patient welfare and to the licensure obligations of supervising faculty, we respectfully submit this formal request to the Orthodontic Program Oversight Committee that Dr [Doe] be dismissed from the residency program.

See, Exhibit 11, a true and correct copy of which is attached and incorporated herein by

reference (Redacted Signed Faculty Statement).  Further, Dr. Doe had not worked with two of

the faculty members, Drs. Dubravko Pavlin and Anurag Patel, who signed this document,

calling into question how they would be able to assess her clinical performance.

17. Prior to the AEC meeting, counsel for the School of Dentistry provided Dr. Doe a list of the

members of the AEC.  This list included Dr. Nikita Ruparel (Chair), Dr. Ahmed Sabbah

---

[17] _Id._
[18] Id.

(recused), Dr. Joshua Stone, Dr. Elva Jordan, Dr. Maria Karakousoglou, Dr. Palaiologou-Gallis, Dr. George Cobb, and Dr. Hassem Geha.

18. Dr. Doe attended the AEC dismissal meeting on August 11, 2025.  AEC members present included Dr. Nikita Ruparel (Chair), Dr. Joshua Stone, Dr. Elva Jordan, Dr. Maria Karakousoglou, and Dr. Hassem Geha.  Dr. Angela Palaiologou-Gallis and Dr. George Cobb were not present.  However, Dr. Challa was present and stated he would be sitting as a member of the AEC.  Dr. Doe immediately protested his inclusion based on his having a conflict of interest.  Dr. Doe clearly communicated to the AEC that this protest was based on Dr. Challa's previous communications about her performance with Dr. Karakousoglou.  *The AEC spent several minutes discussing the appropriateness of Dr. Challa's inclusion.  In the end, they made no decision regarding his having a conflict of interest.  Instead, they decided that he would remain on the committee because they were concerned, they would not have a quorum if he were removed*.  They did not discuss rescheduling the AEC meeting for a time when the missing members, Dr. Angela Palaiologou-Gallis and Dr. George Cobb could be present.

19. At that meeting Dr. Karakousoglou made the following statement:

> The Orthodontic Residency Oversight Committee has determined that Dr. [Doe] cannot safely or reliably progress in the program due to her inability to meet the minimal clinical standards required for patient care.  This has persisted despite multiple opportunities, targeted instruction, and a structured plan to provide her with additional supervised clinical activities. Her failure to follow direct administrative directives has affected the continuation of care of her patients and prevented the program from identifying a viable path forward for her education. These issues on her documented patterns of providing inconsistent or inaccurate information has eroded faculty trust and confirmed that the level peer and [unintelligible] performance required are not reached.
> That will be all from us.

This presentation took a total of 55 seconds and did not reference specific missing skills, incidents leading to the OROC's recommendation, or addressable accusations. Instead, it continued the vague accusations which gave Dr. Doe no genuine chance to respond, or for the AEC to determine, whether her performance was such that she should be dismissed. In addition, while Dr. Karakousoglou referenced a "structured plan" the second remediation plan, noted in the letter informing Dr. Doe that she was being placed on probation, was never given to her. She also had not worked with any of the faculty after March 28, 2025, due to her illness.

20. On August 12, 2025, Dr. Ruparel emailed Dr. Jane Doe a letter stating:

> The Advanced Education Committee, in its meeting on August 11th, 2025, considered your overall performance and your dismissal from the Orthodontics and Dentofacial Orthopedics Program. After considering the evidence presented from both sides, including your address to the Committee, this Committee dismisses you from the school because you failed to maintain adequate academic and professional standards. I am informing you by this letter that you are dismissed as a resident from The UT Health San Antonio - School of Dentistry.[19]

21. On August 18, 2025, Dr. Doe timely filed an appeal by submitting an appeal letter to Dean Hargreaves.[20] Dr. Hargreaves should not have decided the appeal as he had prior knowledge of Dr. Doe's matter and had communicated with Dr. Karakousoglou and Dr. Doe on several occasions regarding the remediation and probation decisions and plans. Dr. Hargreaves had previously told Dr. Doe he did not wish to get involved due to a conflict of interest and that, he believed it was outside what he could do ethically. Despite his having previous knowledge of the matter; despite his having previously been Dr. Doe's program director of the DDS/PhD program for over 7 years and research mentor for over 2 years; and despite his having told Dr.

---

[19] See Plaintiff's Original Complaint Exhibit 23.
[20] See Plaintiff's Original Complaint Exhibit 24.

Doe her placement on probation lacked due process, he did not recuse himself from deciding the appeal of the AEC dismissal decision.  Instead, he sent a letter stating, "I do not agree with the request in your appeal to overturn the decision of dismissal."[21] This decision endorsed actions taken in bad faith and without the procedural safeguards he had previously recognized and advocated for.

22. As mentioned before, Dr. Doe's residency was part of an ongoing NIH grant.  This grant had several phases, one of which included the requirement of Dr. Doe's participation in the dental specialty/Residency Program concurrent with her faculty position to receive the 5-year R00 phase. Without the residency training, NIH will only allow 3-years for the R00 phase.   NIH states:

> Upon achievement of a tenure track research faculty position, an awardee may progress to the second award phase (R00), which provides 3 or 5 years of independent research support. The option for 5 years of R00 support is a unique program feature that is designed to encourage an initial focus on postdoctoral research training (K99 phase), rather than dental clinical specialty training. To receive the 5 year R00 project period, a K99/R00 applicant must identify a clinical dental specialty, recognized by the ADA National Commission on Recognition of Dental Specialties and Certifying Board, and explain why the specialty training will enhance an independent academic research career. A 5 year R00 phase will be awarded, if the candidate receives a tenure track research faculty position at a school that will accommodate a concurrent dental specialty training at no more than 25% effort per year.[22]

Not complying with the institutional commitment letter is noncompliance with the grant.  This noncompliance could result in termination or suspension of the NIH grant.  As detailed in the NIH Grants Policy Statement:

> If a recipient has failed to comply with the terms and conditions of award, NIH may take one or more enforcement actions which include disallowing costs,

---

[21] See Plaintiff's Original Complaint Exhibit 25.
[22] See https://www.nidcr.nih.gov/grants-funding/funding-priorities/future-research-initiatives/nidcr-dual-degree-dentist-scientist-pathway-independence-award; accessed on 09/10/2025.

withholding of further awards, or wholly or partly suspending the grant, pending corrective action. NIH may also terminate the grant in whole or in part as outlined in 2 CFR Part 200.340.[23]

This early termination would be two years earlier than the original grant award and would be a direct result of Dr. Doe's dismissal from the Residency Program.[24]

23. Defendant, University of Texas at San Antonio, School of Dentistry, has also taken steps to disable Dr. Doe's email and other institutional accounts since the dismissal. She has had to contact the IT department multiple times to have her accounts reinstated, only to find them cancelled again the next morning. This has complicated and, in some cases, prevented Dr. Doe from continuing her research with the NIH grant.

24. Plaintiff's counsel has been in nearly constant communication with the assistant general counsel for Defendant University of Texas at San Antonio, School of Dentistry, since this case was filed. This began with emailing the filed Plaintiff's Original Complaint; Plaintiff's Motion to Proceed Under a Pseudonym; and Plaintiff's Emergency Motion for a Temporary Restraining Order and Request for Temporary Injunction on September 11, 2025. This email was sent shortly after the filings were accepted through the ECF with a copy of the documents and a request to accept service or agree to a waiver of service. Counsel was apparently out of the office that day at a conference and responded the next day that she was not authorized to either accept or waive service but that she would forward this information to the Attorney General's office to have someone appointed to the matter that would have the authority to do

---

[23] See https://grants.nih.gov/grants/policy/nihgps/HTML5/section_8/8.5.2_remedies_for_noncompliance_or_enforcement_actions-_suspension__termination__and_withholding_of_support.htm; accessed on 09/21/2025.

[24] Counsel for Plaintiff did not fully understand the full impact the dismissal would have on the NIH grant at the time the initial Motion for TRO was written. It was only through further discussion regarding the impact the denial would have that counsel became aware of the NIH's ability to terminate the grant prematurely.

so.  Since filing the original motion for a temporary restraining order plaintiff's counsel emailed with counsel for Defendant, University of Texas at San Antonio, School of Dentistry, all but one day.  It appears an assignment of an Assistant Attorney General (hereinafter, "AAG") was not a priority, and the assistant general counsel was not able to provide contact information for them.  In the meantime Plaintiff's counsel sent the waiver information to the assistant general counsel so that she could provide it to the AAG once they were appointed.  It was not until Saturday, September 20, 2025, and after Plaintiff's counsel had arranged to have a process server provide the documents to the individual defendants on Monday, that Plaintiff's counsel was informed an AAG had been assigned.  Plaintiff's counsel still has not been contacted by the AAG assigned and was only given an email address for that person on Sunday, September 21, 2025.  At the assistant general counsel's request, Plaintiff's counsel has cancelled the process server to permit the AAG to accept the waiver of service themselves.

**25.** Unless enjoined by this Court, Defendant will prevent Plaintiff's participation in the Residency Program which will likely result in the premature termination of Dr. Doe's NIH grant two years before its intended conclusion, as the five years is contingent upon concurrent residency training. As a result, the Plaintiff will lose two years of NIH funding, be unable to complete her federally funded research, and the grant itself may be suspended or permanently terminated due to the School of Dentistry's lack of compliance with the NIH's terms and conditions. In addition, the Defendant may communicate adverse decisions regarding the Plaintiff to third parties, further jeopardizing her professional reputation and future research opportunities.

### III.    ARGUMENTS

26. Pursuant to Rule 65(a)(1) of the Federal Rules of Civil Procedure, undersigned counsel for the Plaintiff respectfully certifies that on September 10, 2025, Plaintiff filed a Complaint in this matter.

27. A Plaintiff must demonstrate they are entitled to a preliminary injunction.  "A preliminary injunction should be granted only if: (1) there is a substantial likelihood that plaintiff will prevail on the merits, (2) there is a substantial threat that irreparable injury will result if the injunction is not granted, (3) the threatened injury outweighs the threatened harm to defendant, and (4) granting the preliminary injunction will not disserve the public interest."  See, *Boyd v. Roland*, 789 F.2d 347, 349 (5th Cir. 1986); see also, *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir. 1989).

28. **There is a Substantial Likelihood that Plaintiff will Prevail on the Merits.**  Plaintiff's claims, and specifically those under the due process clause are likely to succeed on the merits based on the facts as alleged in Plaintiff's Original Complaint.[25]  However, because Plaintiff has not had an opportunity for discovery and trial preparation, she is not required to demonstrate absolute certainty of success on the merits of her claims.  See, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830 (1981).  In the case of a potential constitutional violation, as alleged by Plaintiff in this case, the likelihood of success on the merits will often be the determinative factor in deciding a motion for preliminary injunction.  See, e.g. *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017).  Because Plaintiff's due process claims can be most easily evaluated on the basis of the undisputed or clearly established facts currently

---

[25] See Plaintiff's Original Complaint ECF Docket No. 1.

known to all parties, it is upon those claims that Plaintiff focuses the instant motion for relief. The Fifth Circuit recently outlined and adopted the U.S. Supreme Court's framework for determining what process is due in university disciplinary proceedings, like that at issue in this case:

> Generally, the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail.

See, *Plummer v. Univ. of Hous.*, 860 F.3d 767, 773 (5th Cir. 2017) (citing *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). As a result, this standard serves as the framework for the arguments addressed below.

29. **The School of Dentistry's Remediation, Probation, and Dismissal Process Was Not Fundamentally Fair, Did Not Provide Plaintiff with Meaningful Notice or an Opportunity to Respond, Permitted Improper Participants, and Violated their Own Resident Handbook Policies.** As a resident at the School of Dentistry, Plaintiff was due at a minimum the right to meaningful notice and the opportunity to respond to allegations made against her. As articulated in Plaintiff's Original Complaint, Defendants failed to ensure that Plaintiff received even this minimum due process protections afforded to students.

   a. Specifically, *the School of Dentistry failed to provide Plaintiff with any notice of the OROC meetings held that discussed and made recommendations regarding Plaintiff*.

These recommendations were the basis for the AEC "invitations" to present only "extenuating circumstances." *At no point was Plaintiff given an opportunity to dispute the non-specific, unsubstantiated, and false allegations made against her*.

**b.** The School of Dentistry also permitted Dr. Challa to participate in the meetings despite his having a clear conflict of interest. The School of Dentistry also designated, and allowed, Dean Hargreaves to decide the appeal despite his earlier participation and discussions regarding the matter.

**c.** In addition, the School of Dentistry did not follow its own rules. The School of Dentistry placed Plaintiff on remediation and probation without having followed the procedure in the Resident Training Manual. For example:

    **i.** They did not have the program director *and* the chair review the evaluations with Plaintiff.

    **ii.** They permitted individuals other than program directors, such as Dr. Soo Cheo, to participate in the AEC meeting regarding placing Plaintiff on probation, despite his apparently not being a program director at the time.

    **iii.** They did not place Plaintiff on probation for substandard performance in didactic, clinical, behavioral, or professional/ethical areas or for grades below a 3.0.

    **iv.** They did not permit Plaintiff to complete the remediation plan prior to placing her on probation.

    **v.** They did not permit Plaintiff the opportunity to either appeal the probation or complete the probation they placed her on.

      **vi.** They did not permit Plaintiff to make a procedural appeal to the President.

  **d.** Plaintiff has also been told no meeting minutes or recordings exist, leaving her no way to determine if there was a basis for the OROC's recommendation or to confirm decisions made by the AEC.

**30. There is a Substantial Threat of Irreparable Injury if the Injunction is Not Granted.** Irreparable harm refers to harm that cannot be adequately remedied by monetary damages or other legal remedies. As Plaintiff has alleged that Defendants have infringed upon her constitutional rights, irreparable injury may be presumed. See, *Dixon v. Ala. State Bd. of Educ*., 294 F.2d 150, 158 (5th Cir. 1961)[26]; see also, *Doe v. Cummins*, 662 Fed.Appx. 437, 446 (6th Cir. 2016)[27] and *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).[28] If Plaintiff is not reinstated to the Residency Program, the grave hardships she has suffered, and is now suffering, will continue unabated. She has devoted the entirety of her professional career of over 20 years to dentistry and related research and will undoubtedly struggle to obtain future employment opportunities in the event that the NIH grant is suspended or terminated prior to its term. This will also negatively affect Plaintiff's ability to be accepted to other residency programs.

**31. The Threatened Injury Outweighs the Threatened Harm to Defendants.** The balance of equities demonstrates that any harm that may be experienced by Defendants by being enjoined from proceeding dismissing Plaintiff from the Residency Program is grossly outweighed by

---

[26] "[D]ue process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct."

[27] "Although a university student must be afforded a meaningful opportunity to present his side, a full-scale adversarial proceeding is not required. The focus, rather should be on whether the student had an opportunity to 'respond, explain, and defend,' and not on whether the hearing mirrored a criminal trial." (internal citations omitted)

[28] "When it comes to due process, the 'opportunity to be heard' is the constitutional minimum. But determining what being 'heard' looks like in each particular case is a harder question." (internal citations omitted)

the above-articulated harm to Plaintiff. Although the School of Dentistry may experience some harm if the Court does not permit it to move forward with dismissal, such harm does not outweigh that suffered by Plaintiff as a result of the erroneous dismissal. Unless this Court issues the requested injunctions, Plaintiff will likely be unable to undo the damage cause by the continued School of Dentistry proceedings against her. Therefore, the balance of hardships tips decidedly in favor of Plaintiff in the present case.

32. **Granting the Preliminary Injunction Will Not Disserve the Public Interest.** The public interest weighs heavily in favor of an injunction. Indeed, injunctive relief is necessary to protect the public interest in the present case. Public policy provides that governmental agencies, and public universities like Defendants, should be enjoined from acting in a manner contrary to the law. Beyond that, it is in the public interest to ensure that Texas public universities provide the requisite due process protections to students, residents, and faculty members accused of misconduct and poor performance before imposing the harshest possible sanctions like those imposed in this case. As a result, the public interest[29] is best served by the Court's grant of a preliminary injunction against the Defendants in this case.

33. **The Temporary Restraining Order Will Maintain the Status Quo.** The courts have long held that a temporary restraining order "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm…." See, *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439, 94 S. Ct. 1113, 1124 (1974).

---

[29] In addition to the legal benefits for the public, Dr. Doe's research has the potential to lead to novel periodontal regenerative therapies for treating periodontal disease and its associated bone loss. Premature loss of funding could significantly delay or prevent the development of these therapies, ultimately hindering public access to innovative treatments that may improve oral and systemic health. As stated in Dr. Doe's grant application: https://reporter.nih.gov/search/2v7F0szls064VHjlMZRK9Q/project-details/11196782

The NIH grant has not yet been terminated. However, there is a very real likelihood that it may be terminated if Dr. Doe's dismissal is allowed to stand and the Defendant School of Dentistry's lack of compliance with the institutional commitment letter is communicated to NIH. Further, Defendant, University of Texas at San Antonio, School of Dentistry's recurring termination of Dr. Doe's accounts has caused difficulty with her ability to continue her grant-funded research. Plaintiff has communicated with Defendant, University of Texas at San Antonio, School of Dentistry, and several of the named defendant's regarding her concerns with the NIH grant for several months. Plaintiff's counsel notified the assistant general counsel for the Defendant, University of Texas at San Antonio, School of Dentistry, shortly after filing the request for the temporary restraining order and has continued that communication, nearly daily, from the time the original request. A Temporary Restraining Order is appropriate pursuant to USCS Fed. Rules Civ. Proc. R. 65(b)(1). Plaintiff's employment is tied to the NIH grant and will suffer immediate harm if the NIH grant is terminated. Further, Plaintiff's counsel has attempted, in good faith, to communicate with Defendant's through their counsel. The delay caused by Defendants should not be held against Plaintiff.

34. This Court has authority under Federal Rules of Civil Procedure, Rule 65 to issue the requested preliminary relief.

## IV.    <u>CONCLUSION</u>

35. For the reasons stated in this motion, as well as those provided in Plaintiff's Original Complaint, Plaintiff asks the Court to issue a temporary restraining order and/or preliminary injunction, preventing Defendants from proceeding with their decision to dismiss Dr. Doe from the Residency Program until final resolution of the above-referenced cause on the merits or

until such time as this Court is afforded the opportunity to hear the parties' arguments regarding Plaintiff's requests for preliminary injunctive relief. There is substantial likelihood that Plaintiff will establish at trial that the process for the decisions to place Plaintiff on remediation and probation and, ultimately to dismiss her, violate her right to due process under both the 14th Amendment to the United States Constitution and the Texas Constitution Article I, § 19.  A Temporary Restraining Order is necessary to (a) preserve the status quo, to prevent the irreparable injury to Plaintiff that would result from the dismissal of Plaintiff; (b) prevent the harm that would result from the communication of negative information regarding her participation in the Residency Program; (c) prevent the School of Dentistry from doing anything that would cause NIH to reduce the 5-years of R00 grant funding to 3-years of funding and/or suspend or terminate the R00 grant; and (d) allow the Court to render effective relief if the Plaintiff prevails at trial. Plaintiff would have no adequate remedy at law, and this Court's ability to fashion effective relief would be significantly impaired, if the Defendants were permitted to prevent Plaintiff's participation in the Residency Program  and/or communicate negative information to others in a way that is found, after trial, to be unlawful.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that the Defendants, and all persons acting on their behalf,

1.    be enjoined from preventing Plaintiff's participation in the Residency Program and/or communicating negative decisions regarding Plaintiff to others, including the NIH, during the pendency of this action;

2.      be required to honor the School of Dentistry's commitment to NIH by outlining clear guidelines that retain the 75% protected research time for her grant funded research and 25% time devoted to residency training;

3.      Plaintiff further requests that the Court temporarily restrain Defendants, and all persons acting on their behalf from:

4.      (a) communicating the decision to dismiss Plaintiff to individuals and/or entities outside of the School of Dentistry, including the NIH, unless there is a clearly established deadline occurring before the Court can hear Plaintiff's motion for a preliminary injunction, from this date and until the Court can hear Plaintiff's motion for a preliminary injunction for a time not to exceed fourteen (14) days; and

5.      (2) communicating the decision to dismiss Plaintiff to individuals within the School of Dentistry who were not directly involved with the decision or necessary for the preparation of defense of this matter, from this date and until the Court can hear Plaintiff's motion for a preliminary injunction for a time not to exceed fourteen (14) days.

Dated: September 22, 2025.

Respectfully submitted,
DAVID K. SERGI AND ASSOCIATES, P.C.

By: */s/ David K. Sergi*
**David K. Sergi**—Attorney in Charge
State Bar No: 18036000
david@sergilaw.com
Jessica L. Cousineau
OSB No. 012374
jessica@sergilaw.com
329 S Guadalupe Street
San Marcos, TX 78666
Phone: (512) 392-5010
Fax: (512) 392-5042
COUNSEL FOR PLAINTIFF, JANE DOE

## Certificate of Service

I certify that a true copy of this document was served in accordance with the Rules of Civil Procedure on the following on September 22, 2025.

[X]    Shea Fennessey by electronic mail at Shea.Fennessey@oag.texas.gov.

[X]    Erica Valladares by electronic mail at valladarese@uthscsa.edu..

By: */s/ David K. Sergi*
David K. Sergi
COUNSEL FOR PLAINTIFF, JANE DOE