UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. JANE DOE,<br>*Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | Case No.  SA-25-CA-01140-XR |
| UNIVERSITY OF TEXAS AT SAN ANTONIO, SCHOOL OF DENTISTRY, DR. KENNETH M HARGREAVES, DR. MARIA KARAKOUSOGLOU, DR. SANDRA ANDARI, DR. SHAZA ABASS, DR. VISHNU RAJ, DR. RAVIKUMAR ANTHONY, DR. NIKITA RUPAREL, DR. AHMED SABBAH, DR. SUMAN CHALLA, DR. JOSHUA STONE, DR. ELVA JORDAN, DR. ANGELA PALAIOLOGOU-GALLIS, DR. SOO CHEOL JEONG, DR. HASSEM GEHA,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## ORDER ON MOTION TO DISMISS

On this date, the Court considered Defendants' Motion to Dismiss (ECF No. 18), Plaintiff's Response (ECF No. 28), and Defendants' Reply (ECF No. 29). After careful consideration, the motion (ECF No. 18) is **GRANTED**.

## BACKGROUND

Plaintiff has sued Defendant University of Texas at San Antonio ("UTSA") School of Dentistry and 14 of its faculty members. She alleges that they unlawfully dismissed her from the school's orthodontics residency program. She claims that the dismissal violated her right to due process (both substantive and procedural) and breached a contract that she had with the university.

1

## I. Facts

### A. Plaintiff's Research and Residency

Plaintiff is a licensed dentist and full-time researcher at the UTSA School of Dentistry with the title of Assistant Professor. ECF No. 1 at 4, 9. Her relationship with UTSA began in 2022 after she received a research grant from the National Institutes of Health and the National Institute of Dental and Craniofacial Research. *Id*. In return for a portion of the grant funds, UTSA agreed to hire her as faculty, sponsor her research, and admit her to its Orthodontics Residency Program. *Id.* at 8, 10. Plaintiff began her academic enrollment in the Residency Program in the fall of 2024. *Id*. at 11. She received a Resident Training Manual at the start of the semester. *Id.* at 13. She claims that this document "became a contract between [herself] and the School of Dentistry." *Id*.

### B. Fall 2024 Counseling

During the fall semester, Plaintiff believed herself to be performing at the level of her peers. *Id.* at 12. She received a semester grade-point average of 3.231. *Id*. During clinical assessments, she received minor corrections. *Id*.

Nonetheless, she received a counseling early in that semester from her supervising faculty. In August 2024, Plaintiff met with Defendant Maria Karakousoglou, director of the Residency Program, and Marquis Plant, the academic program coordinator. *Id* at 12. Karakousoglou stated to a colleague that the meeting was to discuss Plaintiff's "difficulties completing her assignments on time and meeting the required standards for first-year residents." ECF No. 1-2 at 97. Plaintiff's Complaint does not contest this purpose but instead states that "[a]t no time during the . . . discussion did Dr. Karakousoglou tell [her] that this was a formal counseling session or that written documentation was being created." ECF No. 1 at 12. Plaintiff complains that this was a "informal discussion, not a formal counseling session." *Id*. at 13.

2

### C. Negative Academic Evaluations

At the conclusion of the fall semester, Plaintiff received formal evaluations from the Residency Program faculty. *Id.* at 15. The evaluations included anonymized qualitative feedback and areas for improvement. *Id.* Plaintiff's feedback from her first semester included the following:

(1) "[Plaintiff] [n]eeds to revisit the basics and develop a clear understanding of each instrument's role in the clinic . . . ."

(2) "This resident is significantly struggling in both clinical and academic performance, with noticeable gaps in diagnostic knowledge, treatment planning, and clinical execution."

(3) "[Plaintiff] has faced challenges in keeping pace with her peers, and her understanding of clinical concepts and skills is still developing."

(4) "A more proactive approach to learning, greater professionalism, and active participation in discussions are necessary to meet program expectations."

(5) "[B]eing more open to feedback and demonstrating a more positive, professional approach in both patient interactions and faculty discussions will help foster a more productive learning environment."

ECF No. 1-2 at 102. Plaintiff requested the full, deanonymized evaluations and was denied. ECF No. 1 at 15.

### D. Remedial Academic Plan

Due to her Fall 2024 performance, Plaintiff received a remedial academic plan from the Orthodontics Residency Oversight Committee ("OROC") in February 2025. *Id.* The OROC "carefully crafted [the remedial plan] to help [Plaintiff] build on [her] progress and support [her] in meeting the program's expectations." ECF No. 1-2 at 105. The plan stated that "[f]ailure to meet any of the expectations outlined in this plan at any point during the remediation period will result

3

in further review and a recommendation for academic probation. As per the program's policy, non-compliance will be reassessed, and any lack of progress may lead to additional actions." *Id.*

Plaintiff sought an "opportunity to dispute the Initial Remediation Plan" but was denied. *Id.* at 17. She did, however, receive another counseling from Karakousoglou. *Id.* at 16. Karakousoglou explained the remediation plan to Plaintiff. *Id.* In an email to her supervisor, Karakousoglou stated that two other faculty members attended the counseling, and the group also discussed Plaintiff's issues with attendance and professionalism. ECF No. 1-2 at 110.

### E. Academic Probation

In March 2025, Plaintiff was placed on academic probation after notice and a hearing.

#### 1. Notice

On March 21, 2025, Plaintiff received a letter from the chair of the Advanced Education Committee ("AEC"). In the letter, the chair wrote to "formally inform [Plaintiff] that [Plaintiff's] departmental Residency Oversight Committee has recommended that [Plaintiff] be placed on academic probation due to concerns regarding [her] didactic and clinical performance." ECF No 1-2 at 116. Further, the letter stated that "[b]efore a final vote on this recommendation, [Plaintiff could] appear . . . to provide any information regarding extenuating circumstances that may have contributed to [her] academic and/or clinical performance." *Id.*

Plaintiff complains that the OROC had met to discuss her without notifying her in advance. ECF No. 1 at 19. She also complains that, even though the AEC gave her the opportunity to provide information regarding extenuating circumstances, she was not allowed more than a day's notice prior to doing so. *Id.*

#### 2. Hearing

On March 25, 2025, the AEC met to decide whether to place Plaintiff on academic probation. *Id.* at 21. Plaintiff attended. *Id.* The chair stated that Plaintiff had "substandard

4

performance" in the residency program. *Id.* The AEC discussed the accusations with Plaintiff for "less than fifteen minutes" before the AEC excused Plaintiff. *Id.* It then placed her on academic probation for failing "to meet the standards required for successful advancement in the program." *Id.*

That same day, Plaintiff filed a "retaliation complaint" against Karakousoglou with UTSA. *Id.* at 22. Her request for an investigation was denied. *Id.*

Plaintiff became ill on March 28, 2025. *Id.* She did not meet with Karakousoglou to receive her second remediation plan, although it was placed in her educational file. *Id.*

### F. Academic Dismissal

The Complaint states that Plaintiff was dismissed from the Residency Program in June 2025 after notice and a hearing.

#### 1. Notice

On June 25, 2025, the AEC chair sent a letter to Plaintiff. *See* ECF No. 1-2 at 140. The letter stated that the OROC had moved to dismiss Plaintiff from the Residency Program "based on ongoing concerns regarding [her] clinical performance and the reliability required for successful progression in the program." *Id.* The letter set a date for a hearing before the AEC and invited Plaintiff to attend and provide "any information regarding extenuating circumstances." *Id.* Plaintiff again complains that she was not made aware that the OROC had met to discuss her. ECF No. 1 at 23.

The AEC chair followed up with a second letter on July 11, 2025. *See* ECF No. 1-2 at 142. This second letter supplemented the reasons why the OROC had recommended dismissal. It specified issues with "clinical performance," "failure to meet academic and administrative expectations," and "conduct inconsistent with program policies" (e.g., "There have been repeated inconsistencies in the information you provided regarding your academic performance, attendance,

5

and other responsibilities."). *Id.* at 142–43. Plaintiff claims that this letter provided insufficient notice to allow her to respond with "extenuating circumstances" at her hearing one month later. ECF No. 1 at 24. But she also claims that she requested and received additional documents from UTSA, and with these documents she was "able to discover specific complaints against her." *Id.* at 25.

### 2. Hearing

Plaintiff attended the AEC hearing regarding her dismissal from the Residency Program on August 11, 2025. *Id.* at 25. She objected to the inclusion of some faculty members on the committee because she believed that they had conflicts of interest. *Id.* The meeting included a statement by Karakousoglou which allegedly included "vague accusations which gave [Plaintiff] no genuine chance to respond" or the AEC the ability "to determine . . . whether her performance was such that she should be dismissed." *Id.* at 26.

The AEC dismissed Plaintiff from the Residency Program the next day in a letter signed by 15 faculty members. *Id.* at 27.

## G. Appeal

Plaintiff received the opportunity to appeal her dismissal to the Dean of the School of Dentistry, Defendant Kenneth Hargreaves. *Id.* at 27. She appealed on August 18, 2025. *Id.* Hargreaves denied her appeal four days later. *Id.*

## II. Procedural History

Plaintiff filed this suit on September 11, 2025. ECF No. 1. She named as defendants the UTSA School of Dentistry, Dean Hargreaves, Residency Program Director Karakousoglou, and 12 other faculty members who acted as members of either the AEC or OROC. *Id.* She asserts three theories of liability.

(1) **Common-Law Breach of Contract.** UTSA allegedly breached a contract that it had with Plaintiff because her dismissal did not follow the procedure specified in the Resident Training Manual. *Id*. at 38–39.

(2) **Violation of Substantive Due Process Under 42 U.S.C. § 1983.** Defendants allegedly violated Plaintiff's right to substantive due process because her dismissal was arbitrary and capricious. *Id.* at 36–38.

(3) **Violation of Procedural Due Process Under 42 U.S.C. § 1983.** Defendants allegedly violated Plaintiff's right to procedural due process because:

   a. she was not provided meaningful notice prior to her dismissal, *id.* at 30–31;

   b. her probation and dismissal hearings were "little more than a kangaroo court" that did not provide her with a chance to respond, *id.* at 31–33;

   c. "[i]ndividuals with clear conflicts of interest participat[ed] in decision making" regarding her dismissal, *id.* at 33–34; and

   d. Defendants did not follow the Resident Training Manual, *id.* at 35.

When filing her Complaint, Plaintiff simultaneously (1) moved to proceed under a pseudonym "to protect her identity from being revealed in any potential media coverage," ECF No. 2, and (2) moved for a Temporary Restraining Order and Preliminary Injunction directing UTSA to readmit Plaintiff to the Residency Program, ECF No. 3.

The Court held a hearing on these motions on September 30, 2025, and denied Plaintiff's motion for a Temporary Restraining Order after finding that Plaintiff failed to demonstrate substantial likelihood of success on the merits. *See* Text Order Dated September 30, 2025.

The Defendants have now moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim. ECF No. 18.

**LEGAL STANDARD**

**I. Subject Matter Jurisdiction**

Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a motion under Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413. Further, materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

**II. Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## DISCUSSION

### I. Sovereign Immunity Bars Plaintiff's Claim Against UTSA

Defendant UTSA asserts sovereign immunity as an arm of the state. It asks the Court to dismiss Plaintiff's claims against it for lack of subject matter jurisdiction.

#### A. UTSA Is Immune From Suit Under 42 U.S.C. § 1983

UTSA first argues that sovereign immunity bars Plaintiff's due process claims. ECF No. 18 at 6. In response, Plaintiff does not dispute that UTSA is ordinarily entitled to sovereign immunity. *See* ECF No. 28 at 7; *see also United States Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501 (5th Cir. 2018) ("We have previously held that many of the state agencies at issue in this appeal are entitled to sovereign immunity as arms of the state. . . . So too for the universities."). Nor does Plaintiff deny that "the Eleventh Amendment generally protects state agencies from suit." ECF No. 28. Rather, Plaintiff claims that because UTSA "is being sued for violation of [Plaintiff's] right to due process and is not being sued for damages," sovereign immunity does not bar this claim.

Sovereign immunity will shield a state agency like UTSA from suit "unless the state has waived sovereign immunity or Congress has expressly abrogated it. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Plaintiff brings this claim under Section 1983, and Congress did not abrogate sovereign immunity with that statute. *Walker v. Livingston*, 381 F. App'x 477, 478 (5th Cir. 2010) ("Section 1983 does not, explicitly or by its clear language, indicate on its face an intent to abrogate the immunity of the states."). Nor has Texas waived its sovereign immunity against actions for injunctive relief under Section 1983. *Tex. A & M Univ. Sys. v. Koseoglu*, 167 S.W.3d 374 (Tex. App.—Waco 2005)*, rev'd on other grounds*, 233 S.W.3d 835 (Tex. 2007); *see also Tex. Dep't of Licensing & Regulation v. Pallotta*, No. 09-06-055 CV, 2006 Tex. App. LEXIS 7496 (Tex. App.—Beaumont Aug. 24, 2006, no pet.) ("[A] request for injunctive relief [under

Section 1983] clearly seeks to control or force the cessation of State action, and, as such, is barred by sovereign immunity"); *Doe v. Bonath*, 705 F. Supp. 3d 690, 704 (W.D. Tex. 2023) (finding sovereign immunity bars a Section 1983 claim against Texas Tech University because "the state has not waived its sovereign immunity nor has it consented to suit in federal court.").

Sovereign immunity applies. Plaintiff's claims against Defendant UTSA under Section 1983 are **DISMISSED**.

### B. UTSA Is Immune From Suit for Breach of Contract

UTSA asserts sovereign immunity against Plaintiff's breach-of-contract claim.[1]  "[Texas] does not waive immunity from *suit* simply by contracting with a private party." *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854–55 (Tex. 2002). "[A]bsent special statutory permission, a party cannot pursue a breach of contract action against the State [of Texas] without first obtaining consent from the Legislature under chapter 107 of the Texas Civil Practice and Remedies Code." *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

Plaintiff does not claim that she obtained consent from the Texas Legislature. Instead, she argues that sovereign immunity does not apply because "there is a narrow carve out for a suit where, as here, no damages are requested." ECF No. 28 at 8. She derives this purported carveout from a 1982 case which stated that "it is . . . well settled that an entity or person whose rights have been violated by the unlawful action *of a State official* may bring suit to remedy the violation or prevent its occurrence, and such suit is not a suit against the State requiring legislative or statutory authorization." *Univ. of Tex. Health Sci. Ctr. at Houston v. Babb*, 646 S.W.2d 502, 504 (Tex. App.—Houston [1st Dist.] 1982, no writ) (emphasis added). But Plaintiff overlooks that UTSA is

---

[1] UTSA also denies that it formed a contract with Plaintiff based on the Resident Training Manual. ECF No. 18 at 8. The Court need not decide this issue.

11

not a state official. Sovereign immunity bars her claim. *See Pham v. Blaylock*, 712 F. App'x 360, 364 (5th Cir. 2017) ("Pham also argues that ULM violated its contractual relationship with him. Claims such as this by a citizen against an agency of his state are barred by the Eleventh Amendment.").

Plaintiff's claim against UTSA for breach of contract is **DISMISSED**.

## II. Plaintiff Fails to State a Claim Against the Individual Defendants

Plaintiff has failed to plead her standing to sue 12 of the 14 defendants. She further failed to state a claim against the remaining two.

### A. Plaintiff Has Not Pled Facts to Establish Standing to Sue the Individual Defendants

Through her Section 1983 claim against the individual defendants, Plaintiff seeks an injunction ordering these defendants to reinstate her into the residency program. The Supreme Court in *Ex Parte Young,* 209 U.S. 123 (1908), recognized "an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities." *Nelson v. Univ. of Tex.*, 535 F.3d 318, 320 (5th Cir. 2008). A claim for reinstatement is a cognizable form of prospective relief under this doctrine. *Id.* at 322. But a plaintiff must nonetheless satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The individual defendants argue that Plaintiff has not pled facts to establish her standing to sue them. Their argument is based on standing's redressability requirement. This requirement states that "[n]o federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021).

Here, the remedy that Plaintiff seeks is an injunction ordering Defendants to reinstate her into the Residency Program. The individual defendants argue that Plaintiff has inadequately pled redressability because she has not alleged that they possess the authority to reinstate her. In other

words, Plaintiff has not alleged that a judgment against them would remedy her injury because Plaintiff has not alleged that they can reinstate her even if the Court orders them to do so. ECF No. 18 at 12 ("Because Plaintiff has not alleged that the Individual Defendants possess the specific authority needed to redress Plaintiff's alleged injury, Plaintiff lacks standing to bring these claims against them.").

Plaintiff's response appears to misunderstand this argument by conflating redressability with injury.[2] She argues that, "[g]iven [that] it was [the individual defendants'] responsibility to issue the notices and make the decisions, it follows that it would also be their responsibility to do those [things] without violating [Plaintiff]'s rights to due process." ECF No. 28 at 11.

But the issue here is not whether Plaintiff has pled that the individual defendants caused her injury. Rather, it is whether Plaintiff pled that they can redress that injury if Plaintiff receives a favorable decision. *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) ("[Plaintiff] does not have standing to pursue injunctive relief because [Defendant] is without authority to redress his injuries."); *see also Whole Woman's Health v.* Jackson, 595 U.S. 30, 43 (2021) ("While *Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws, the petitioners do not direct this Court to any enforcement authority the attorney general possesses in connection with S.B. 8 that a federal court might enjoin him from exercising.").

Here, 12 of the 14 Individual Defendants are merely members of the OROC or AEC. Plaintiff does not allege that these defendants have any authority to reinstate her should the Court order them to do so. She has therefore failed to plead her standing to sue them. *Walker*, 381 F. App'x at 479 ("*Ex parte Young* allows, under certain circumstances, the plaintiff to seek injunctive

---

[2] Plaintiff's brief also at times risks confusing the current posture of the case with the its merits. Here, for instance, the question is whether Plaintiff has properly pled standing in her Complaint. But Plaintiff's argument on this issue fails to reference her Complaint.

13

relief under section 1983. However, it is clear that the plaintiffs lack standing to assert claims for injunctive or declaratory relief."); *cf. Cty. of Austin*, 943 F.3d at 1003 (holding that the plaintiff lacked standing to sue a state official after failing to plead standing's injury requirement).

But favorably construed, Plaintiff has pled that two of the 14 individual defendant have authority to redress her injuries. Plaintiff alleged that Defendant Hargreaves is the Dean of the School of Dentistry and Defendant Karakousoglou is the director of the Residency Program. ECF No. 1 at 5. A reasonable inference is these two managers, given their positions, would be able to reinstate Plaintiff to the Residency Program should the Court order them to do so.

Excepting Defendants Hargreaves and Karakousoglou, Plaintiff's claims against the Individual Defendants are **DISMISSED**.

### B. Plaintiff Inadequately Pled a Substantive Due Process Claim

Defendants argue that Plaintiff failed to plead facts to establish her substantive due process claim. In the context of an academic dismissal, "substantive due process amounts to a 'constitutional protection against arbitrary dismissal[.]' *Pham*, 712 F. App'x at 364 (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985)). "[O]nly the most egregious official conduct can be said to be "arbitrary in the constitutional sense . . . ." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Applied to the current posture, the question is whether Plaintiff has pled facts that, if established, would raise a reasonable inference that her dismissal was "arbitrary in the constitutional sense." *See Cty. of Sacramento*, 523 U.S. at 846.

Here, the Complaint states that before she was dismissed, Plaintiff received an informal counseling session, negative faculty evaluations, a remedial academic plan, a probationary period (preceded by notice and a hearing), a dismissal hearing (preceded by formal notice), and an appeal. These proceedings were consistently based on Plaintiff's academic performance. Plaintiff's own

14

pleadings therefore establish that she received sufficient process such that her dismissal was not "arbitrary in the constitutional sense." *Cty. of Sacramento*, 523 U.S. at 846.

Contrary to Plaintiff's assertions, it is not enough to allege that school administrators failed to scrupulously honor their own student conduct manual. *See Pham*, 712 F. App'x at 364 ("None of the Board's alleged violations of its own rules are of the nature to offend substantive due process."). Nor is it enough to claim that the administrators failed to adequately weigh mitigating evidence in reaching their decision. *See Regents of Univ. of Mich.*, 474 U.S. at 225 ("When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment.").

Plaintiff has failed to state a substantive due process violation as to the Individual Defendants. This claim is **DISMISSED**.

### C. Plaintiff Inadequately Pled a Procedural Due Process Claim

Defendants similarly moved to dismiss Plaintiff's procedural due process claim. In the context of procedural due process, an academic dismissal requires "far less stringent procedural requirements" when compared to a disciplinary one. *Ekmark v. Matthews*, 524 F. App'x 62, 64 (5th Cir. 2013). Namely, a student in a residency program such as Plaintiff is only entitled to "the minimum procedure of notice and not a hearing." *Id.*

Here, the Complaint states that Plaintiff received both notice and a hearing prior to her dismissal.

Plaintiff complains that "she was given no opportunity to dispute the allegations against her" at her dismissal hearing. ECF No. 28 at 16. But the Constitution does not require this. *Pham*, 712 F. App'x at 363 (rejecting a former student's arguments that due process required his school to "provide him with written findings of fact and . . . the opportunity to cross-examine witnesses"). Nor does Defendants' purported violation of the Resident Training Manual support a due process

15

violation. *Ekmark*, 524 F. App'x at 64 ("Contrary to Ekmark's claims, he was not entitled to a formal hearing. . . . Furthermore, even if a formal hearing was required by UTHSC policy, the UTHSC rules do not establish the constitutional floor of due process.").

The Court recognizes that Plaintiff has several grievances regarding the adequacy of the process that UTSA and its faculty gave her. But from the standpoint of the Federal Constitution, she received all the process that was due. *See Logarbo v. La. State Univ. Health Scis. Ctr*, No. 22-cv-831, 2022 U.S. Dist. LEXIS 226415, at *16 (W.D. La. Nov. 29, 2022) (holding that a residency student received sufficient process in his academic dismissal after being "placed on probation and given a remediation plan"). Plaintiff's procedural due process claim is **DISMISSED**.

### D. Plaintiff Inadequately Pled a Claim for Declaratory Relief

Defendants lastly moved to dismiss Plaintiff's claim for declaratory relief. With this claim, Plaintiff asks the Court to make several declarations stating that Defendants breached their contract with Plaintiff and violated her Constitutional rights. *See* ECF No. 1 at 42–43. These claims are predicated on Plaintiff's breach-of-contract and due process claims. Plaintiff failed to adequately plead these. As such, her claim for declaratory relief is **DISMISSED**.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Granting leave to amend would be futile because her allegations cannot be cured to overcome the obstacles noted above.

Plaintiff's Motion to Proceed Under a Pseudonym (ECF No. 2), Plaintiff's Amended Motion for a Preliminary Injunction (ECF No. 7), and Defendants' Motion to Consolidate Proceedings (ECF No. 21) are **DISMISSED AS MOOT**.

A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 19th day of February, 2026.

                                        _____
                                        XAVIER RODRIGUEZ
                                        UNITED STATES DISTRICT JUDGE